The first case, I am informed all parties are here, so I won't call the calendar. The first case is King v. Wang. We'll hear from appellant. Good morning. May it please the court, my name is Tim Savitsky, my associate, and we are here to discuss the dismissal of a RICO case, a RICO claim, on the basis of an ostensible lack of a pattern of racketeering activity. The decision is ironic in the sense that not only do we allege a pattern, but it's a very strong pattern of racketeering activity that we allege. This 45 predicate acts, it occurred over a seven-year period, the criminality. It involved multiple victims, and it involved multiple defendants. Now, Judge Keenan was relying upon the Weizman case. Weizman had a subsequent history that's critical to the analysis, and yet it's missing from the decision that dismissed our claim. In the subsequent history, the court held that there was indeed, upon amended pleadings, the court in Weizman held that there was indeed a pattern of racketeering activity, and the facts of that case were very similar to the facts here. In fact, the allegations of pattern in that case were far less commanding than the allegations of pattern here. Weizman also involved somebody who was looting an estate. The number of victims that were involved and the number of predicate acts that were involved were contained. In our case, again, this was a massive fraud that took place through very predicate activity. It wasn't just mail and wire fraud. It involved extortion. It involved transporting stolen goods across state lines. In short, this is not a small contained level of criminality. It was substantial. Now, it's closed-end continuity, meaning that we're not required to show that this would continue into the future, but that it satisfied the closed-end continuity rubric of the precedent that interprets the RICO statute. There is no doubt that we meet that standard. If you look at the other cases, the other RICO cases that we cite, including H.J. Inc., which is the Supreme Court, and Fresh Meadows, and Mandranas, they all concern cases that were even... Fresh Meadows is a summary order. That's correct. It is, Your Honor. However, we don't cite it for its precedental value. We cite it just for the standard that's established in the case, in particular, that it doesn't require multiple schemes of racketeering activity. I thought you cited it also, perhaps, as an example of the application of the standard. One of the things I've always thought about our summary order practice is that sometimes there's a principle, and then the principle gets applied a lot in a routine way, and it's sometimes helpful to look at how we applied the standard in particular fact circumstances. I appreciate that point, Your Honor. I think that in that case, the case is very significant because it does show how the standard would be applied. If applied here, I think it more than dictates that a pattern of racketeering activity would be found. Even if the case wasn't cited, and even if we didn't rely on it, the other cases more than amply show that the pattern here is cognizable. It's sufficient to satisfy our requirement of establishing continuity plus relationship. Again, a closed-ended pattern of racketeering activity. If you look at the Lawrence v. Cohen case, the Mandanus case, those cases, too, deal with circumstances where we have the looting of an estate and where it was found to be ample, satisfactory, the pleadings were found to be satisfactory. In addition, I would note, and it's not something that Judge Keenan directly addresses in his decision, but there's more than ample authority cited in our submission to substantiate the fact that we have standing, that my clients, I should say, have standing to assert these claims. Their persons, I'm sorry, I have to take a sip of water. Forgive me for that. Their persons interested in the estate and they have a legally cognizable standing to pursue these claims. How did Judge Keenan find on the probate exception? Did he think that it was present? He found that the probate exception didn't apply and he was absolutely correct in making that finding. If you look at the Supreme Court's decision in the Marshall case and its progeny, there is no doubt that this case, the case that's before you now, does not deal with something that does not deal with an administrative matter, an estate's administration. It deals with someone stealing, doing things outside of the estate. Is the will still under probate? It is. So are these items that you seek, are they part of the estate? We don't seek items. We seek money. There is nothing that we seek that's part of the estate. And even if it were, I would point to the Lefkowitz 2 case, which says that facts can be closely intertwined with probate matters and still not fall, the case still not fall within the probate exception. This is the furthest thing. I mean, yes, granted, it does deal with a fiduciary for an estate and it does deal with the state property in some respects. It also deals with our client's personal property, but it does deal with the state property that was liquidated. And you're entitled to raise some claims about the bona fides of the fiduciary. Absolutely. Right, in that context. Absolutely. And the cases will say that. We cited at least four, well, at least three cases that make that point. Well, are you seeking money damages on behalf of the estate as well as on behalf of your client's individual? Yes, that's absolutely right. And as to what you refer to as personal property, do you agree that the complaint would have to be amended to add the corporations that, or do you disagree with Judge Keenan that it's the corporations that actually owned that property? It's both. My clients individually own property and the corporations. And yes, we would have to amend. And if time permitted, I would have got to that point next, namely that we should be allowed to amend. It's an administrative matter. It falls under Section 17 of the FRCP. We would amend. We would add the corporations. And I think that would cure the facial defect in the complaint. But aren't there works that also belong to the estate that your client and their corporations have not yet received a distribution effort? Yes. And we're pursuing those. We're pursuing the proceeds on behalf of the estate. And we're allowed to do that as a person interested in the estate under the surrogate statute, under if you need the site, I'm going to give you the site. Just give me one second, please. That's okay. I'm sure that It's in our papers. It's in our papers more than once. Okay. Thank you, Your Honors. Thank you very much. Have you reserved any time for rebuttal? I reserved three minutes. Yes. Okay. Thank you. We'll hear from the appellees. Good morning, Your Honors. Carolyn Shields on behalf of Andrew Wong and Shu Kung Wong, being sued individually and by their DBA names. First, I want to confess error. Our briefs stated that the kind of standing that we believe the plaintiffs lacked was Article III standing, in fact, is prudential standing. And the August 28 J letter we submitted has the cases that show we made that mistake. That means that a dismissal for lack of standing is a 12B6 dismissal and not a 12B1 dismissal. The District Court had jurisdiction to go on to consider whether the complaint stated a RICO claim. The appellant's attorney mentioned extortion as a predicate act. Extortion was raised for the first time in the appellate briefs. It was not mentioned below. The complaint does not allege an extortion cause of action. It's missing at least two material elements of extortion, fear, and the interstate commerce connection. What about the predicate acts that the complaint does mention? I have the complaint. In the context of a pattern, there are 18 predicate acts that are mailer wire fraud and need to be given lesser weight than the other factors. Why do you say that? There are many cases that say that if you have a single scheme to defraud a single victim of one piece of property or one sum of money and you mail multiple letters, that's not very persuasive of a pattern, even though it might constitute several counts of mail fraud. But it seems to me, and you can correct me if I'm wrong or point out where I'm wrong, the plaintiff here alleges different mail frauds on different occasions, maybe as part of the overall scheme, which they would say shows relatedness, but that's the overall scheme read pretty broadly. There are different instances of what they would claim are theft or fraud, I thought. I thought it was their counting that in connection with the sales of estate assets, they got 18 predicate acts from the wire possible mail fraud. Yes, but there are different frauds involved, aren't there? Different situations in which different paintings are fraudulently sold for, according to the allegations, which we have to take as true for these purposes, sold at lowball prices to your clients than sold for big profits by them. That's what they say, but it may be one overall scheme, but it's not quite the same thing as I have a con scheme that I'm working on you and I'm trying to get your money and I send you repeated emails, interstate emails or something like that, as part of the same narrow project. I think Judge Keenan was right that there was a single scheme to acquire all the assets of the estate. This is assuming the allegations are true. How is that different than saying there's a single scheme to run a mafia family? I mean, there's an overall scheme. There's an overall project, but when you say the project is to get all the assets of the estate, well, first of all, some of their allegations are from before there even was an estate. They're trying to, according to the complaint, get assets from Mr. Wong Sr. Then it goes on over a period of seven years with different little projects where, in some cases, they say things are physically stolen. In other cases, there's this scheme with respect to different items to sell them for the lowball prices. I mean, aren't these, you know, first of all, an extended period of time and secondly, rather different pieces of that overall scheme? Well, they're all related and other factors. They have to be all related, right? You're trying to, you know, they have to be all related or it can't be a pattern. Right. That's right. And other factors are important. It's not just the duration. It's the fact that there are two victims, two participants with five buyers in China making a single appearance each. And what the district court believed was a single, narrow purpose. But the Supreme Court said, did it not, that continuity is centrally a temporal concept. But temporal duration is not everything. If it were, you would... Have we ever held that a Ricos pattern was insufficiently alleged for closed-end continuity that lasted as long as seven years? Yes, there are other cases. We cited cases where there were a seven-year time period. I think that was a Weitzman case, went over for seven years. Note that the estate is not a party to this action. Andrew Wong is being sued in his individual capacity. Andrew as an individual is different from Andrew the representative. They're different parties. With respect to the estate, could you address your argument, please, that the probate exception deprives us of subject matter jurisdiction here? I understood that the Supreme Court has narrowed that in the Marshall case, and that the exception applies only if we have to perform a purely probate act or reach a race in the custody of the state court. Is my understanding too narrow? No, that's exactly right. But we have a rare case here where both prongs, it falls within both prongs. The district court would be called on to determine... One of the predicate acts was whether there was duress in procuring a phony will. And if that's determined, then it would annul a will. Is that currently being litigated also in the surrogate court? It's been stayed, Your Honor. The will contest as between two wills, and one of them, there's a contest as to whether the testator had capacity to execute the most recent will. And that's been stayed, pending discovery and collection of the assets of the estate. Both of those issues are raised in the surrogate's court, but litigation of one of them has stayed pending resolution of the other? The will contest, which will to probate, including the capacity of the testator to execute the most recent will, has been stayed pending the 2103 discovery proceeding. It's not quite bleak house yet, but this is 13 years since the death of Mr. Wong that this has been tied up in probate court. Well, there have been a lot of things going on in changes of counsel and changes of surrogate. There's been a bankruptcy that was an appeal. There have been repeated motions and petitions that need not have been filed, in my opinion. But certainly the surrogate's court is not solely responsible for taking 13 years. Right now, there are several petitions pending. There are multiple petitions that have been filed that are stayed. The surrogate has decided that things should proceed in a particular order. Surrogate Glenn thought that it was more important to collect assets and identify assets before the estate spent money on the will contest to see if there was anything to distribute. There's a $22 million tax lien, and that was the reason to sell the estate assets in order to collect money to pay the taxes. And has that been done? No. Some of the assets have been sold. I don't know. Another attorney is handling that, and I don't know the answer to that. Okay. With respect to the probate exception, so the district court in this case will be called upon to determine who owns what assets. The Lefkowitz case decided that the ownership of assets was a matter within the probate exception and dismissed that particular claim in the case. I just mentioned the duress, which is the same issue as whether to annul a will, and that is within the first prong of the probate exception. We have cited post-martial decisions in our briefs showing what the courts have determined were within the probate exception since martial, and they're very similar to our case. The majority of, I think all the circuits that have squarely considered the issue have held that the probate exception applies even to federal jurisdiction, federal question jurisdiction. But I haven't seen, at least one circuit in dictum has said it does not, and I couldn't locate any decision of the Supreme Court or of this court applying the probate exception in a nondiversity case. Are you aware of one, or is that something we would have to decide? We cited a case and quoted from it saying that it also applies in a federal question case. I'd have to check to see what jurisdiction it is. I don't know the jurisdiction. Well, but that's important, right? I mean, there are several circuits that have said that, and I respect their views, and they might well be right, but that might be a question we'd have to face if we have not previously decided that. And that is an important question. I answered it in the brief. I just don't remember it this morning, Your Honor. Thank you. Thank you. Thank you, Counsel. Mr. Israel, you've reserved three minutes for rebuttal. Thank you so much. A few points to be made. First of all, Lefkowitz, which was just referred to, was reversed, and its subsequent holding would comport with our argument here, namely that the probate exception would not apply to the facts at bar or to the claims at bar. The second point I'd make is you're right, Your Honor. There are other circuits that applied the probate exception in the context of a federal question, where there's federal question jurisdiction. However, not the Second Circuit. The case that's cited by the appellee is the Seventh Circuit case, and in fact, it was submitted before Marshall was decided. The most important point I'd make, though, in the context of my rebuttal is that the statute of limitations is going to pass soon on many of the claims we've asserted and many claims that could be asserted because of the thieving and the conversion of artwork here. The $60 million worth of artwork was liquidated by the defendants, $60 million effectively stolen from the estate and from my clients. The fact of the matter is, if this case remains dismissed, if the RICO claims remain dismissed, the statutes of limitations will pass and justice will never have its day. That's a fact. Now, I'm not saying that that should influence your assessment of the law by any means. I just think that it points to the urgency of the issue at hand and puts it in a practical context. We stand behind our arguments, and we believe very firmly that a pattern of racketeering activity has been shown, that they're standing, and that the probate exception does not apply. Our arguments are set forth in our moving papers or appellant papers and in our reply papers. I thank you so much for your time. Thank you, counsel. Thank you both. We'll reserve decision.